UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSLYNE DAVENPORT                                                                           PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-CV-743-DPJ-FKB

FEDERAL EXPRESS CORPORATION                                                    DEFENDANT

ORDER

Plaintiff Joslyne Davenport claims that Defendant Federal Express Corporation (FedEx) violated Title I of the Americans with Disabilities Act (ADA) when it fired her because of her disability—injured knee. Davenport is representing herself, and the full scope of her claims is somewhat ambiguous. Regardless, FedEx urges the Court to dismiss her Complaint entirely because all potential claims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6); all claims occurring before January 17, 2020, are time-barred; and Davenport failed to administratively exhaust other claims. *See* Def.'s Mot. to Dismiss [13]. Although the Court will grant FedEx's motion, Davenport may seek leave to amend her Complaint.

I.      Background

The following facts are viewed in the light most favorable to Davenport. Davenport worked as a carrier and delivery driver for FedEx. She claims that in 2015, her manager propositioned her in a sexual manner. First EEOC Charge [14-1] at 2. As a result, Davenport filed the first of two charges of discrimination with the Equal Employment Opportunity Commission (EEOC). That charge was filed in 2016 and alleged sexual harassment and retaliation (though the latter charge was ill-defined). *Id.*; *see also* Compl. [1] at 5. The record does not indicate what became of that first charge, but Davenport says FedEx "drastically" reduced her hours after she filed it. Compl. [1] at 5.

"A couple of months" after the work-hours reduction, Davenport fell at work and injured her knee. *Id.* Her manager at that time, Wayne Agent, let Davenport go home but initially refused to authorize a doctor's visit. *Id.* After Agent relented, the doctor informed Davenport that she had a torn meniscus that required surgery. *Id.* When Davenport returned to work following surgery, FedEx allegedly cut her hours and assigned her delivery route to someone else. *Id.* The Complaint fails to state when any of this occurred, but records attached to Davenport's response to FedEx's motion indicate that the post-meniscus-surgery events occurred in 2017 and 2018. *See* Davenport Statement [15-2] at 2.

Other falls and knee injuries followed. *Id.* As a result, Davenport had knee-replacement surgery on July 8, 2019. Ex. H [1-8] at 8; Davenport Statement [15-2] at 2.[1] FedEx placed Davenport on a worker's compensation leave of absence on January 2, 2019, for the scheduled knee-replacement surgery. Ex. E [1-5] at 1. On August 22, 2019, Davenport's doctor approved a return to light duty beginning September 9, 2019, followed by full duty on October 7, 2019. In part because FedEx did not allow Davenport to work light duty, she did not return to work until January 6, 2020, though she was previously informed that her leave would expire on January 2, 2020. Ex. G [1-7] at 1; Davenport Statement [15-2] at 3.

Shortly after her return to work, on January 9, 2020, Davenport suffered another knee injury and was again placed on worker's compensation leave. Ex. E [1-5] at 1. On February 28, 2020, Davenport notified FedEx that she would not be able to return to work until she was re-

---

[1] The date of the replacement was not in Davenport's pleading and is found instead in a statement she attached when responding to FedEx's motion to dismiss. That statement is beyond the scope of what the Court may consider under Rule 12(b)(6), but it provides some insight into the facts and highlights what Davenport might assert in an amended pleading.

checked by doctors. Ex. H [1-8] at 1. On that same day, FedEx fired Davenport, purportedly for exceeding her maximum allowable leave. Ex. G [1-7] at 1.

That decision prompted Davenport's second EEOC charge, which she filed on July 15, 2020. This one asserted only disability discrimination. Second EEOC Charge [1-9] at 2. About one month later, on August 19, 2020, the EEOC issued a Dismissal and Notice of Rights, indicating that it was closing its file because it was "unable to conclude that the information obtained establishes violations of the statutes." EEOC Dismissal [1-9] at 1. The notice referenced only EEOC Charge No. 423-2020-01309, the number that corresponds with Davenport's second EEOC charge. *Id.* at 2. It did not mention Davenport's first EEOC charge, and the record does not indicate what happened to it.

Finally, on November 17, 2020, exactly 90 days after receiving the dismissal and right-to-sue notice, Davenport filed her Complaint using a court-provided form for pro se litigants. In it, she checked the box for "Americans with Disabilities Act of 1990" and no other statutory basis for jurisdiction. Compl. [1] at 3. She then checked the boxes for "[t]ermination of employment," "[f]ailure to accommodate my disability," [u]nequal terms and conditions of employment," and "retaliation." *Id.* at 4. FedEx's motion to dismiss [13] has been fully briefed; the Court finds that it has both subject-matter and personal jurisdiction.

II.     Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

3

(2007)). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

When, as here, a litigant is pro se, her filings "are to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) (internal quotations and citation omitted). "That being said, such liberal construction 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Gaitan v. Saenz*, No. 21-40042, 2022 WL 1981047, at *2 (5th Cir. June 6, 2022) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

In considering a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)).

Thus, to overcome a Rule 12(b)(6) motion, the plaintiff must plead "[f]actual allegations . . . rais[ing] a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In addition, dismissal under Rule 12(b)(6) on the basis of an affirmative defense—like a statute of

4

limitations—is appropriate only if "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

A court considering these issues must make its rulings based on what is stated in the pleadings (unless the court converts the motion to dismiss to a summary-judgment motion). Fed. R. Civ. P. 12(d). There are exceptions. For example, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). Here, Davenport offers facts in her response to FedEx's motion that were not part of her pleadings (i.e., her Complaint), so those facts may not be considered with respect to FedEx's motion.

Finally, even if a complaint fails to meet the pleading requirements, that "should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case. . . ." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). "This Court believes that the rule is especially true with pro se plaintiffs" like Davenport. *Okeke v. Am. Express Co.*, No. 3:15-CV-455-DPJ-FKB, 2015 WL 7078784, at *3 (S.D. Miss. Nov. 13, 2015). But leave may be denied if "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 248 n.6.

III.     Analysis

As discussed above, Davenport lists four claims, all under the ADA. FedEx says the claims must be dismissed because (1) the retaliation claim is procedurally barred and meritless; (2) the failure-to-accommodate claim is procedurally barred, or, in any event, Davenport fails to establish a prima facie case because she is not a qualified individual with a disability; and (3) Davenport fails to state a claim for discriminatory termination and unequal terms and conditions of employment. The Court will address these alleged deficiencies in turn.

   A.     Retaliation Claims

Davenport alleges that after returning to work from her meniscus surgery, FedEx cut her hours and took her route away. Compl. [1] at 5. She claims that this constituted retaliation. *Id.* She also states that "[t]his type of behavior continued to go on." *Id.* But the dates of the alleged acts are not readily apparent from her Complaint. According to FedEx, the claim must be dismissed because (1) Davenport failed to administratively exhaust an ADA retaliation claim with the EEOC; (2) even if she did exhaust the claim, most of the alleged acts are time-barred; and (3) even if the claim is not barred, the Complaint fails to state a prima facie retaliation claim.

      1.     Exhaustion of Administrative Remedies

"[T]he ADA incorporates by reference the procedures applicable to actions under Title VII." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *see also* 42 U.S.C. § 12117(a). Accordingly, a plaintiff must file a charge with the EEOC before commencing an ADA action in federal court. 42 U.S.C. § 2000e-5(f)(1). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Stingley v. Watson Quality Ford,*

*Jackson, MS*, 836 F. App'x 286, 291 (5th Cir. 2020) (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)).

That said, courts should look "beyond [an EEOC charge's] four corners, to its substance rather than its label." *Id.* (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). And they "should not be stingy when assessing the litigable claims [an EEOC charge] encompasses." *Id.* Thus, a cause of action can be based on "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Id.* (citing *Fellows v. Universal Restaurant, Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983)).

Here, Davenport checked the box for discrimination based on "disability" in her EEOC charge, but she did not check the "retaliation" box. EEOC Charge [1-9] at 2. That alone would not be fatal if it reflects "a mere technical defect or omission." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) (holding that plaintiff exhausted claim despite failing to check correct box) (citation omitted). "[T]he crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez*, 431 F.2d at 462. Davenport's statement read as follows:

> DISCRIMINATION BASED ON *(Check appropriate box(es).)*
> ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
> ☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
> ☐ OTHER *(Specify)*
>
> DATE(S) DISCRIMINATION TOOK PLACE
> Earliest 01-09-2020   Latest 02-28-2020
> ☐ CONTINUING ACTION
>
> THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:
> I was hired around November 2015 as a Carrier/Delivery Driver at $18.87/hour. On February 28, 2020, I was terminated while out on medical leave because I couldn't give a definite (un-determined) date on when I could return back to work.
>
> On January 9, 2020, I sustained an on-the-job injury and submitted a medical certification without a definite date of my return.
>
> I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

Second EEOC Charge [1-9] at 2.  She never mentions the word "retaliation" and describes no conduct that would be considered protected activity; she alleges discriminatory termination from employment for giving an indefinite return date.

In *Horton v. CCA Properties of America, LLC*, an unpublished (and therefore non-binding) case from the Fifth Circuit, the plaintiff "did not check the box for retaliation in his EEOC charge, assert that he was demoted or fired as retaliation, or assert having taken any actions that would have provoked retaliation."  No. 12-20404, 2013 WL 2248033, at *6 (5th Cir. May 8, 2013).  The court concluded that Horton failed to exhaust his retaliation claim.

A different result occurred in *Williams v. Tarrant County College District*, another unpublished opinion where the district court found the plaintiff failed to exhaust because she neglected to mark the box for "retaliation" and never used the word "retaliation" in her statement.  717 F. App'x 440, 445 (5th Cir. 2018).  The Fifth Circuit reversed because the plaintiff had "(1) provided her employer with a doctor's note regarding reasonable accommodations; (2) was denied reasonable accommodations; and (3) was terminated thereafter."  *Id.*  The court concluded that "[t]he administrative investigation which can reasonably be expected to grow out of Williams' charge would examine whether she was engaged in a protected activity—seeking reasonable accommodations—and whether she was terminated as a result."  *Id.* at 445–46 (cleaned up and citations omitted).  Davenport's charge is more like the one in *Horton* because she simply says the employer fired her for giving an indefinite return date; she never mentions protected activity or retaliation.  This claim was not exhausted.

2. Time-Barred Conduct

Even assuming Davenport had exhausted her retaliation claim when she filed her July 15, 2020 charge of discrimination, her Complaint fails to identify any acts of retaliation that occurred within the applicable limitations period. Under the ADA, a charge must be filed with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). This time limit operates as a statute of limitations. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). Accordingly, any acts occurring more than 180 days before Davenport filed the EEOC charge—i.e., before January 17, 2020—would be time-barred.[2]

The only specific acts of *ADA* retaliation Davenport alleges in the Complaint appear to have occurred before January 17, 2020. Davenport alleges that FedEx retaliated against her by cutting her hours and her route when she returned to work following meniscus surgery. Compl. [1] at 5. That conduct appears to have occurred in 2017 and 2018. *See* Davenport Statement [15-2] at 2. She also states, "[t]his type of behavior continued to go on." Compl. [1] at 5. But she has not pleaded any specific dates, so none of the described acts occurred within the statutory window. Davenport has not pleaded a plausible retaliation claim within the relevant time frame.

3. Merits

Even assuming a timely and exhausted claim, FedEx challenges the retaliation claim on the merits. To establish a prima facie case of retaliation under the ADA, Davenport must show

---

[2] Equitable tolling can excuse an untimely filing, but Davenport bears the burden of justifying equitable tolling. *Head*, 168 F.3d at 232. While there may be other bases for equitable tolling, it can excuse an untimely filing "in the following circumstances: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Melgar v. T.B. Butler Pub'g Co., Inc.*, 931 F.3d 375, 380–81 (5th Cir. 2019). Davenport has not pleaded any facts that justify equitable tolling.

(1) she engaged in an activity the ADA protects, (2) she suffered an adverse employment action, and (3) there exists a causal connection between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).

A protected activity is one in which an employee (1) opposes any practice made an unlawful employment practice or (2) makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under the ADA. *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914 (5th Cir. 2008). The clearest example of retaliation that Davenport outlines in her Complaint is that FedEx cut her hours after she filed a sexual-harassment charge against her manager in 2016. Compl. [1] at 5. That claim, however, would fall under Title VII of the Civil Rights Act of 1964 and is not properly before the Court.[3]

Davenport also alleges that FedEx retaliated against her after the meniscus surgery by cutting her hours and her route. But as noted, the Complaint provides no dates for those cuts, and they appear to have occurred before January 17, 2020. *See* Davenport Statement [15-2] at 2 (stating that conduct occurred in 2017 and 2018).

---

[3] As noted, Davenport expressly limited all claims to the ADA when that was the only box she checked on her form Complaint. Comp. [1] at 3. Cutting hours for filing a sexual-harassment complaint would fall under Title VII, and she did not check that box. *Id.* She did, however, mention those allegations in her Complaint. *See id.* at 5. And, her prayer for relief states that "since the day I filed the sexual harassment charge . . . , my time at Federal Express has not been easy." *Id.* at 6. She also complains about these events in her response to the motion to dismiss. *See* Pl.'s Resp. [15] at 2. But even assuming her Complaint should be liberally construed to assert a Title VII retaliation claim related to the first EEOC charge in 2016, it would be dismissed for four reasons. First, there is no indication that Davenport filed suit within 90 days of receiving a right-to-sue notice from the EEOC regarding the retaliation alleged in the first charge of discrimination. First EEOC Charge [14-1] at 2. Second, Davenport did not file an EEOC charge regarding alleged retaliation for filing her first charge of discrimination. Third, even if the second EEOC charge included this claim—which it doesn't—any alleged retaliation before January 17, 2020, would be time-barred. 42 U.S.C. § 2000e-5(e)(1). Finally, the Complaint fails to provide "factual allegations" regarding Title VII retaliation occurring after that date that would state "a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

There are no other retaliatory acts alleged in the Complaint, but Davenport does say FedEx refused to provide light-duty work following an injury on January 6, 2020. *See* Davenport Statement [15-2] at 2. The Court cannot consider those allegations under Rule 12(b)(6) because they are not found in the Complaint or attached documents. *See* Fed. R. Civ. P. 12(d). Even if it could, Davenport supports her allegation by citing a return-to-work form Dr. Jeff Almand signed on January 17, 2020. *See* Davenport Statement [15-2] at 4 (citing "Ex. F," Return-To-Work Form [1-6] at 1). But that form indicted that Davenport would need to be "re-checked" on February 14, 2020, and further indicated that she could not return to work even with light duty. Return-To-Work Form [1-6] at 1 (not checking box for return to light duty). In other words, the document she cites contradicts her claim that she requested light duty.

At bottom, the Court must consider the allegations contained in the Complaint, and those allegations do not plausibly identify retaliatory conduct occurring between January 17, 2020, and February 28, 2020. But Davenport is not an attorney and is proceeding pro se, so the safer course is to give her an opportunity to fix her claims—if she can—by moving for leave to amend her Complaint. *See Hart*, 199 F.3d at 248 n.6. As to the retaliation claim, a proposed amended complaint (which she must attach to any motion seeking leave to amend) should explain the acts that she says constitute protected activity, the dates of those acts, the acts of retaliation occurring between January 17, 2020, and February 28, 2020, and the dates of the alleged retaliation. If she does that, the Court will have a more complete picture as to the retaliation claim and can finally assess whether Davenport exhausted it.

B.   Failure-to-Accommodate Claim

As with the retaliation claim, FedEx says Davenport failed to exhaust her failure-to-accommodate claim because she never mentioned it in her second EEOC charge. Def.'s Mem.

[13] at 5, 9. But this presents a closer question because a request for indefinite leave might be considered a request for an accommodation. Accordingly, the Court will assume without deciding that Davenport exhausted her failure-to-accommodate claim. *See Stingley*, 836 F. App'x 286, 291 (noting that courts must look beyond the "four corners [of the EEOC charge], to its substance rather than its label"). But even if exhausted, only those acts occurring between January 17, 2020 (180 days before her EEOC charge) and February 28, 2020 (the day FedEx terminated her employment) may be considered.

During that window, four events allegedly occurred. First, Dr. Almand signed a return-to-work form on January 17, 2020, stating that Davenport would be "re-checked" on February 14, 2020. Return-To-Work Form [1-6] at 1. He did not mark the box indicating that she could return to work on light duty. *Id.* Second, FedEx extended Davenport's protected leave pending the results of the re-check. *See* Def.'s Ltr. [1-8] at 1. Third, Dr. Almand provided another return-to-work form on February 28, 2020, stating that Davenport could not return to even light duty and that she would be out indefinitely. Return-To-Work Form [1-8] at 1. And fourth, FedEx terminated Davenport's employment that same day.

For these events to establish a prima facie failure-to-accommodate claim, Davenport must show that (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by FedEx, and (3) FedEx failed to make reasonable accommodations for such known limitations. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020). FedEx says Davenport fails the first and third elements.

Starting with the first element, Davenport has not plausibly pleaded that she was a qualified individual under the ADA. "A plaintiff can establish that [s]he is qualified by showing

12

that either (1) [s]he could perform the essential functions of the job in spite of h[er] disability, or (2) that a reasonable accommodation of h[er] disability would have enabled h[er] to perform the essential functions of the job." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)).

"Essential functions are those that 'bear more than a marginal relationship to the job at issue.'" *Id.* (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)). "Reasonable accommodations include 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations.'" *Id.* (quoting 42 U.S.C. § 12111(9)(B)).

Here, Davenport's pleaded facts fail to address her ability to perform her job, and the facts she asserts in her response indicate that she could not. Davenport returned to work on January 6, 2020, following a year-long medical leave. When she did, FedEx allowed her to ride with another driver, but Davenport struggled to perform the essential functions of her job and noted that she "did not know how [she] was going to jump in and out to deliver packages." Davenport Statement [15-2] at 3; *see also id.* (stating that she "had no answer" when asked how she "was going to do [her] job"). Davenport then re-injured her knee on January 9, 2020, and the documents attached to her Complaint state that on January 17, 2020, her doctor informed FedEx that she could not perform even light-duty work. Return-To-Work Form [1-6] at 1. Accordingly, Davenport has not pleaded facts plausibly indicating that after January 17, 2020 (180 days before her EEOC charge), she could perform the essential functions of her job with, or without, reasonable accommodations. If she seeks leave to amend, she will need to identify the

accommodations she requested during this window and how they would have allowed her to perform her job.

Davenport faces similar problems with the third element—that FedEx failed to make a reasonable accommodation. As to that element, she has not pleaded facts plausibly showing that she requested a reasonable accommodation that FedEx denied during the relevant period. She does, however, make a few statements in her response to FedEx's motion that might suggest such requests.

First, as previously noted, Davenport claims that she requested light duty on January 17, 2020. *See* Davenport Statement [15-1] at 4. But again, those statements fall outside the pleadings, *see* Fed. R. Civ. P. 12(d), and conflict with her supporting exhibit, s*ee* Return-To-Work Notice [1-6] at 1 (indicating that she could not return to light duty). Substantively, "[a]n employer is not required to create 'light duty' jobs to accommodate." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d at 800, 809 (5th Cir. 1997) (quoting *Turco v. Hoechst Celanese Chem. Grp., Inc.*, 101 F.3d 1090, 1094 (5th Cir. 1996)); *see also Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995) ("Nor is the [employer] required to find . . . a new job for [plaintiff]. . . ."). That said, a request for light duty might be reasonable if "it is clear that a position . . . exist[s] and [is] vacant." *Foreman*, 117 F.3d at 810. None of this is established in the existing Complaint.

Second, Davenport suggests that FedEx should have extended her leave indefinitely without terminating her job. *See* Resp. [15] at 2. But that would not be a reasonable accommodation even if she had included the statement in her pleading. While "[t]ime off, whether paid or unpaid, can be a reasonable accommodation . . . an employer is not required to provide a disabled employee with indefinite leave." *Moss*, 851 F.3d at 418 (quoting *Delaval v.*

14

*PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)). Thus, "taking leave without a specified date to return . . . is not a reasonable accommodation." *Id.* at 419. That is what Davenport apparently sought, but FedEx was not required to provide it. *Id.*

In sum, Davenport has not stated a failure-to-accommodate claim in her pleading. The outcome might differ if Davenport alleged that she requested an existing and vacant light-duty job she was qualified to perform and FedEx refused. Accordingly, FedEx's motion to dismiss that claim is granted. But, as with the other claims, the Court will allow Davenport to seek leave to amend. If she does, she will need to explain the accommodations she requested that were denied between January 17, 2020, and February 28, 2020, and further explain how she could have performed the essential functions of her job with or without those accommodations.

        C.       Termination and Unequal-Terms-and-Conditions-of-Employment Claims

"The ADA prohibits discrimination against a qualified individual based on the individual's disability." *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525 (5th Cir. 2022) (citing 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). Davenport says FedEx violated this statute by wrongfully terminating her employment and subjecting her to unequal terms and conditions of employment. She clearly exhausted the termination claim with the EEOC, and FedEx does not directly suggest that the equal-terms claim is unexhausted. The Court will therefore consider those claims on the merits, focusing on conduct occurring after January 17, 2020.

As an initial point, Davenport's Complaint never plausibly explains the unequal terms and conditions that she suffered "based on [her] disability," unless she is referring to the termination from employment. *Id.* She merely checks the unequal-terms-and-conditions box on a form complaint without describing it. *See* Compl. [1] at 5.

15

She does seem to describe differing treatment in her response (and the statement she attached to it), but whether she could state an ADA claim based on those statements remains unclear. First, she says FedEx should have extended her leave instead of terminating her employment and notes that "[i]n the past they have been granted an extension." Pl.'s Resp. [15] at 2. But she does not say who "they" are, and it appears from the next sentence that she is talking about extensions she previously received. *Id.* (noting that she received an extension "to hold my job"). Second, she indicates in her attached statement that other injured workers "were allowed to come in on light duty." Davenport Statement [15-2] at 3. But that does not indicate that she was treated unequally with non-disabled employees. In short, Davenport has not pleaded facts plausibly identifying a materially adverse decision (other than the termination) that was based on her disability.

Turning to the termination claim,

> "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.* But [the Fifth Circuit has] also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). For an ADA wrongful-termination claim, Davenport must establish that (1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was subject to an adverse employment decision on account of her disability. *Moss*, 851 F.3d at 417 (citing *LHC Grp., Inc.*, 773 F.3d at 697).

16

FedEx offers several arguments for dismissing this claim, but some are better suited for summary judgment where *McDonnell Douglas* applies. That said, FedEx again argues that Davenport is not a qualified individual entitled to ADA protection. Def.'s Resp. [13] at 7–8. This argument succeeds for the same reason the Court dismissed the failure-to-accommodate claim. As discussed above, to be qualified, Davenport needed to show that she could perform the essential functions of her job despite her knee injury or that she could have performed the essential functions with reasonable accommodations. *Thompson*, 2 F.4th at 467 (holding "Thompson cannot establish a prima facie discrimination claim for the same reason his failure-to-accommodate claim fails—he is not a qualified individual under the ADA") (citing (*Moss*, 851 F.3d at 417).

Davenport fails to plausibly plead facts suggesting that she could perform the essential functions of her job with or without reasonable accommodations. Consequently, Davenport's discriminatory-termination claim is dismissed because she is not a qualified individual under the ADA. Here again, she will be granted an opportunity to seek leave to amend.

IV.   Conclusion

The Court has considered all arguments; those not discussed would not change this result. While Defendant's Motion to Dismiss [13] is granted, Plaintiff may file an amended complaint within 21 days of this Order. Though the Court denies Defendant's Motion for a More Definite Statement [17] as moot, Davenport is instructed to include all of her facts and arguments in a proposed amended complaint that she must attach as an exhibit to her motion seeking leave to amend. That proposed amended complaint must provide numbered paragraphs. Failure to file a motion seeking leave to amend within 21 days of this Order will result in an order dismissing this case with prejudice to refiling and without further notice. Because Plaintiff characterized

her response to Defendant's Motion to Dismiss as a "Motion To Not Dismiss" [14], that motion is denied.

**SO ORDERED AND ADJUDGED** this the 22nd day of December, 2022.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE